UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

COLLEEN ANNE WISDOM,

     Plaintiff,

v.                                                    Case No: 8:20-cv-2689-JSS

COMMISSIONER OF SOCIAL
SECURITY,

     Defendant.

_____/

## ORDER

     Plaintiff Colleen Anne Wisdom seeks judicial review of the denial of her claim for a period of disability and disability insurance benefits (DIB). As the Administrative Law Judge's (ALJ) decision was based on substantial evidence and employed proper legal standards, the decision is affirmed.

## BACKGROUND

### A.    Procedural Background

     Plaintiff filed an application for a period of disability and DIB on November 16, 2017. (Tr. 97, 165–66.) The Commissioner denied Plaintiff's claims both initially and upon reconsideration. (Tr. 114–16, 122–27.) Plaintiff then requested an administrative hearing and on September 12, 2019, the ALJ held a hearing at which Plaintiff appeared and testified. (Tr. 29-61, 129, 132–60.) Following the hearing, the ALJ issued an unfavorable decision finding Plaintiff not disabled and accordingly denied Plaintiff's claims for benefits. (Tr. 7–23.) Subsequently, Plaintiff requested

review from the Appeals Council, which the Appeals Council denied. (Tr. 1–6.) Plaintiff then timely filed a complaint with this court. (Dkt. 1.) The case is now ripe for review under 42 U.S.C. § 405(g).

### B.    Factual Background and the ALJ's Decision

Plaintiff, who was born in 1963, claimed disability beginning on November 15, 2017. (Tr. 21.) Plaintiff attended college and earned an associate's degree. (Tr. 33.) Plaintiff's past relevant work includes work as a registered nurse. (Tr. 21.) Plaintiff alleged disability due to rheumatoid arthritis, fibromyalgia syndrome, and degenerative disc disease. (Tr. 165, 188, 361, 455, 503.)

In rendering the decision, the ALJ concluded that Plaintiff had not performed substantial gainful activity since November 15, 2017, the alleged onset date. (Tr. 13.) After conducting a hearing and reviewing the evidence of record, the ALJ determined that Plaintiff had the following severe impairments: rheumatoid arthritis; fibromyalgia syndrome in multiple joints; status post microdiscectomy at L5-S1; and cervical spine degenerative disc disease with herniated nucleus pulposus and disc protrusions. (Tr. 13.) Notwithstanding the noted impairments, the ALJ determined that Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (Tr. 14.) The ALJ then concluded that Plaintiff retained a residual functional capacity (RFC) to:

> perform light work as defined in 20 CFR 404.1567(b); could stand and/or walk about six hours in an eight hour workday and sit about six hours in an eight hour day, all positions

> considering the usual break periods; could occasionally climb, balance, stoop, kneel, crouch, and crawl, but never climb ladders, ropes, or scaffolds, or at open unprotected heights; avoid extreme vibrations, extreme hot and cold temperatures; overhead reaching with the upper extremities was limited to occasional; and gross and fine manipulation were limited to frequent.

(Tr. 14.)  In formulating Plaintiff's RFC, the ALJ considered Plaintiff's subjective complaints and determined that, although the evidence established the presence of underlying impairments that reasonably could be expected to produce the symptoms alleged, Plaintiff's statements as to the intensity, persistence, and limiting effects of her symptoms were not entirely consistent with the medical evidence and other evidence in the record.  (Tr. 15.)

Considering Plaintiff's noted impairments and the assessment of a vocational expert (VE), the ALJ determined that Plaintiff could not perform her past relevant work.  (Tr. 21.)  Given Plaintiff's background, RFC, and transferable work skills from her past relevant work, the VE opined that Plaintiff could perform other jobs existing in significant numbers in the national economy, such as office nurse and nurse consultant.   (Tr. 22.)   Accordingly, based on Plaintiff's age, education, work experience, RFC, and the testimony of the VE, the ALJ found Plaintiff not disabled. (Tr. 22–23.)

## APPLICABLE STANDARDS

To be entitled to benefits, a claimant must be disabled, meaning that the claimant must be unable to engage in any substantial gainful activity by reason of any

medically determinable physical or mental impairment that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than twelve months.  42 U.S.C. § 423(d)(1)(A).  A "physical or mental impairment" is an impairment that results from anatomical, physiological, or psychological abnormalities that are demonstrable by medically acceptable clinical and laboratory diagnostic techniques.  42 U.S.C. § 423(d)(3).

The Social Security Administration (SSA), in order to regularize the adjudicative process, promulgated the detailed regulations currently in effect.  These regulations establish a "sequential evaluation process" to determine whether a claimant is disabled.  20 C.F.R. § 404.1520.  If an individual is found disabled at any point in the sequential review, further inquiry is unnecessary.  20 C.F.R. § 404.1520(a).  Under this process, the ALJ must determine, in sequence, the following: (1) whether the claimant is currently engaged in substantial gainful activity; (2) whether the claimant has a severe impairment, i.e., one that significantly limits the ability to perform work-related functions; (3) whether the severe impairment meets or equals the medical criteria of 20 C.F.R. Part 404, Subpart P, Appendix 1; and (4) whether the claimant can perform his or her past relevant work.  If the claimant cannot perform the tasks required of his or her prior work, step five of the evaluation requires the ALJ to decide if the claimant can do other work in the national economy in view of the claimant's age, education, and work experience.  20 C.F.R. § 404.1520(a).  A claimant is entitled to benefits only if unable to perform other work.  *Bowen v. Yuckert*, 482 U.S. 137, 140–42 (1987); 20 C.F.R. § 404.1520(g).

A determination by the Commissioner that a claimant is not disabled must be upheld if it is supported by substantial evidence and comports with applicable legal standards. *See* 42 U.S.C. § 405(g). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. v. N.L.R.B.*, 305 U.S. 197, 229 (1938)); *Miles v. Chater*, 84 F.3d 1397, 1400 (11th Cir. 1996). While the court reviews the Commissioner's decision with deference to the factual findings, no such deference is given to the legal conclusions. *Keeton v. Dep't of Health & Human Servs.*, 21 F.3d 1064, 1066 (11th Cir. 1994).

In reviewing the Commissioner's decision, the court may not decide the facts anew, re-weigh the evidence, or substitute its own judgment for that of the ALJ, even if it finds that the evidence preponderates against the ALJ's decision. *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983). The Commissioner's failure to apply the correct law, or to give the reviewing court sufficient reasoning for determining that he or she has conducted the proper legal analysis, mandates reversal. *Keeton*, 21 F.3d at 1066. The scope of review is thus limited to determining whether the findings of the Commissioner are supported by substantial evidence and whether the correct legal standards were applied. 42 U.S.C. § 405(g); *Wilson v. Barnhart*, 284 F.3d 1219, 1221 (11th Cir. 2002).

## ANALYSIS

Plaintiff challenges the ALJ's decision on the following grounds: (1) whether the ALJ erred in refusing to admit late evidence; and (2) whether the ALJ failed to consider Plaintiff's symptoms.  (Dkt. 23 at 4–13.)  For the reasons that follow, neither contention warrants reversal.

### A. ALJ's Refusal to Admit Late Evidence Pursuant to 20 C.F.R. § 404.935

Plaintiff first contends that the ALJ erred when he failed to consider the opinion of Dr. Ginige Swanthri DeSilva and refused to admit her medical source statement on the basis that it was untimely.  (Dkt. 23 at 4–10.)  The Commissioner argues in response that the ALJ did not err in refusing to admit the evidence because Plaintiff failed to comply with the requirements of 20 C.F.R. § 404.935.  (Dkt. 24 at 8–12.)

Claimants bear the burden of proving that they are disabled and are responsible for producing evidence in support of their claim.  *Ellison v. Barnhart*, 355 F.3d 1272, 1276 (11th Cir. 2003).  Under 20 C.F.R. § 404.935(a), a claimant "must inform [the SSA] about or submit any written evidence . . . no later than 5 business days before the date of the scheduled hearing."  *Id.*  If a claimant fails to comply with this requirement, the ALJ may decline to consider or obtain the evidence, unless one of the exceptions in § 404.935(b) applies.  *Id.*  Where the ALJ has not yet issued a decision, the ALJ will accept the evidence where the claimant did not comply with § 404.935(a) because: (1) the claimant was misled by some action of the agency; (2) the claimant had a physical, mental, educational, or linguistic limitation that prevented the claimant from informing the agency about or submitting the evidence earlier; or (3) some other

unusual, unexpected, or unavoidable circumstance beyond the claimant's control prevented the claimant from informing the agency or submitting the evidence earlier. *Id.* § 404.935(b)(1)–(3). Examples of unavoidable circumstances include, but are not limited to the following: (1) the claimant was prevented from contacting the agency due to his or her own serious illness; (2) there was a death or serious illness in the claimant's immediate family; (3) important records were destroyed or damaged by fire or other accidental cause; or (4) the claimant actively and diligently sought evidence from a source and the evidence was not received or was received less than five business days prior to the hearing. *Id.* § 404.935(b)(3)(i)–(iv).

The hearing in this case was held on September 12, 2019. At the hearing, the ALJ acknowledged that Plaintiff notified the SSA of the following additional evidence: (1) medical records from Florida Behavioral Medicine, which Plaintiff informed the SSA about on September 3, 2019; and (2) Dr. DeSilva's medical source statement dated September 10, 2019, which Plaintiff submitted on September 11, 2019. (Tr. 31.)

At the hearing, the ALJ admitted the Florida Behavioral Medicine records as they were submitted more than five business days before the date of the hearing. (Tr. 31.) However, the ALJ declined to admit Dr. DeSilva's medical source statement because it was untimely. (Tr. 32.) Accordingly, the ALJ explained that it would not be accepted, but Dr. DeSilva's medical treatment records would be fully considered:

> ALJ: And so those are in the record. The medical source statement, that was submitted late, and I'm not going to accept that one. But the medical records, they are in the file. In fact, Dr. DeSilva, so actually, that's the most important. The progress notes or treatment records of

> DeSilva are the ones that are actually the most important, and those are in Exhibit 11F.

(Tr. 32–33.)

In the hearing decision, the ALJ discussed 20 C.F.R. § 404.935 and the untimely submission as follows:

> If the claimant wishes that written evidence be considered at the hearing, then the claimant must submit or inform the Administrative Law Judge about the evidence no later than five business days before the date of the scheduled hearing (20 CFR 404.935(a)). Pursuant to 20 CFR 404.935(b), if the claimant misses this deadline but submits or informs the Administrative Law Judge about written evidence before the hearing decision is issued, the Administrative Law Judge will accept the evidence if: (1) an action of the Social Security Administration misled the claimant; (2) the claimant had a physical, mental, educational, or linguistic limitation(s) that prevented submitting or informing the Administrative Law Judge about the evidence earlier, or (3) some other unusual, unexpected, or unavoidable circumstance beyond the claimant's control prevented the claimant from submitting or informing the Administrative Law Judge about the evidence earlier.

> The claimant submitted or informed the Administrative Law Judge about additional written evidence less than five business days before the scheduled hearing date. The undersigned Administrative Law Judge declines to admit this evidence because the requirements of 20 CFR 404.935(b) are not met.

(Tr. 10–11.)   As such, the ALJ referenced § 404.935(b)'s requirements, noted that Plaintiff untimely submitted evidence, found that the exceptions provided in § 404.935(b) did not apply, and declined to consider the late submission.  (Tr. 10–11.)

It is Plaintiff's responsibility to demonstrate an exceptional reason why she failed to timely produce the medical statement.  Plaintiff has failed to show that some

unusual, unexpected, or unavoidable circumstance beyond her control prevented her from informing the agency about the evidence or submitting it earlier. Indeed, there is no indication that Plaintiff informed the SSA of her intention to submit a medical statement from Dr. DeSilva. Moreover, Plaintiff does not provide any information regarding the date of her "missed appointment" (Tr. 32), or details as to how she tried to get an appointment that would have enabled her to timely produce a medical source statement or when the appointment for the September 10, 2019 visit was scheduled. To the extent Plaintiff contends that the threat of Hurricane Dorian formed the basis for an exception under § 404.935(b)(3), the court finds that contention to be without merit as Plaintiff has not demonstrated that this caused her to miss her initial appointment with Dr. DeSilva. Additionally, Plaintiff fails to provide any evidence demonstrating her attempts to re-schedule that appointment, the difficulty in doing so, or how any other circumstance prevented her from informing the SSA about her desire to seek and submit additional records. As such, Plaintiff was still capable of informing the SSA of her intention to obtain a medical source statement and her stated reasons do not demonstrate a circumstance that prevented her from doing so. *See Peters v. Kijakazi*, No. 8:20-cv-1520-JRK, 2022 WL 819978, at *4 (M.D. Fla. Mar. 18, 2022) (finding no error on the ALJ's part "[r]egardless of whether [] reason for failing to complete the form pre-hearing could have been deemed an exception under the Regulations [because] the fact remains that the ALJ was not even notified of the intention to have [the medical source] submit a statement until after the prescribed time period set forth in the Regulations."). Therefore, Plaintiff has failed to satisfy her

burden to timely produce the medical source statement and articulate a basis for an exception for late-produced evidence under § 404.935(b)(3).  Thus, the court finds that the ALJ did not err in refusing to admit Dr. DeSilva's untimely medical source statement.

Moreover, while Plaintiff contends that Dr. DeSilva's untimely submitted medical source statement provides evidence concerning the amount of time she would be off task and absent from work, the task of determining Plaintiff's RFC and ability to work is the duty of the ALJ alone.  *See Beegle v. Soc. Sec. Admin., Comm'r*, 482 F. App'x 483, 486 (11th Cir. 2012) (stating that a claimant's RFC is a matter reserved for the ALJ's determination); *Robinson v. Astrue*, 365 F. App'x 993, 999 (11th Cir. 2010); *Rodriguez v. Comm'r of Soc. Sec.*, No. 6:18-cv-503-Orl-18TBS, 2018 WL 7113871, at *2 (M.D. Fla. Dec. 27, 2018), *report and recommendation adopted*, No. 6:18-cv-503-Orl-18TBS, 2019 WL 316051 (M.D. Fla. Jan. 24, 2019) ("[T]here is no requirement that an ALJ base an RFC finding on a medical source's opinion.").  After reviewing Plaintiff's own testimony, reported daily activities, medical treatment and findings, as well as the treatment records of Dr. DeSilva and opinions of the state agency medical consultants, the ALJ arrived at his formulated RFC, which is supported by substantial evidence of record.  The evidence in the record indicates that Plaintiff was able to grocery shop (Tr. 212, 279, 305), visit relatives (Tr. 43, 205, 511), pick up her dog (Tr. 39), vacuum, dust, and clean up her house (Tr. 42, 203), wash her hair bi-weekly (Tr. 49), make her breakfast and lunch (Tr. 203), and drive (Tr. 204).  Plaintiff also explained that she keeps herself occupied by "read[ing] a lot."  (Tr. 42.)  Additionally,

Plaintiff exercises regularly and her mood, sleep, appetite, interests, hopefulness, and self-esteem were reportedly good. (Tr. 90, 107, 297, 338, 465, 473, 478, 481.)

The ALJ thoroughly discussed Plaintiff's medical records and treatment history in reaching his decision concerning Plaintiff's RFC. For example, the ALJ explained that state agency consultants found mild limitations in the areas of Plaintiff's mental functioning. (Tr. 13–14, 20.) Plaintiff's medical records reflected that she was "alert and oriented, and cognitive examination was grossly normal." (Tr. 498–501.) Additionally, Plaintiff's mental state was good, fair or "within normal limits." (Tr. 19–20.) Moreover, Plaintiff's symptoms of anxiety, depression and post-traumatic stress disorder were managed with medication. (Tr. 20, 511–21.) Plaintiff's rheumatoid arthritis and fibromyalgia were managed with therapeutic injections and medication. (Tr. 458–60.) Dr. DeSilva noted a good prognosis for rheumatoid arthritis (Tr. 475), Plaintiff's morning stiffness felt better in the middle of the day, and her joints were not swollen on examination (Tr. 18, 19, 491, 493). Additionally, notwithstanding her diagnoses, Plaintiff received "no specific evaluation or description of symptoms related to the fibromyalgia or Raynaud's diagnoses" and the symptoms of pain, morning stiffness, and fatigue "had been present and associated with her rheumatoid arthritis diagnosis." (Tr. 19.) The ALJ incorporated these impairments into her RFC, noting that "the record shows the claimant has difficulty with her hands due to occasional stiffness, mostly in the mornings, as well as problems with reaching. She also should avoid exposure to vibrations and hazards due to her arthritis and degenerative disc disease, and to temperature extremes due to the

arthritis." (Tr. 21.)  Further, Plaintiff's examination for her degenerative disc disease and right leg pain did not reveal "any evidence of other entrapment neuropathy, such as lumbar plexopathy or peroneal neuropathy." (Tr. 16, 361.)  Plaintiff's medical records reflected "good motor strength throughout on manual muscle testing with normal muscle tone and bulk."  (Tr. 361.)   Additionally, Plaintiff experienced improvement in her lower back pain with microsurgery.  (Tr. 462.)  The ALJ also discussed other conditions and records which did not provide sufficient information for gastrointestinal complaints and dermatological conditions, which constituted non-severe impairments.  (Tr. 18–19.)

Thus, the ALJ considered Plaintiff's entire medical record, including Dr. DeSilva's treatment notes, and ultimately found Plaintiff retained an RFC "supported by the claimant's activities of daily living, and the objective medical findings and treatment as detailed above, all of which suggest greater sustained capacity than described in the testimony." (Tr. 21).  Accordingly, the ALJ's evaluation of Plaintiff's condition and medical record was based on substantial evidence.

### B.  The ALJ Properly Evaluated Plaintiff's Symptoms

Plaintiff next argues that the ALJ erred in assessing Plaintiff's symptoms in accordance with Social Security Ruling (SSR) 16-3p, 2017 WL 5180304 (Oct. 25, 2017). (Dkt. 23 at 10–13.)  In response, the Commissioner argues the ALJ did not err when evaluating Plaintiff's subjective complaints. (Dkt. 24 at 13–20.)

When determining whether a claimant is disabled, in addition to objective record evidence, the ALJ must consider the claimant's subjective symptoms and the

extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence.  20 C.F.R. § 404.1529.  To evaluate whether a claimant has established disability through the claimant's testimony of subjective symptoms, the ALJ must apply the following test: first, the ALJ must determine whether there is evidence of an underlying medical condition, and second, whether there is objective medical evidence substantiating the severity of the symptoms from the condition or whether the medical condition is of sufficient severity that it would reasonably be expected to produce the symptoms alleged.  *Holt v. Sullivan*, 921 F.2d 1221, 1223 (11th Cir. 1991); *see* 20 C.F.R. § 404.1529.

If an ALJ determines that the claimant's medical condition could reasonably be expected to produce the claimant's symptoms, the ALJ must then evaluate the intensity and persistence of the claimant's symptoms to determine their effect on the claimant's capacity to work.  20 C.F.R. § 404.1529(c)(1); *Klawinski v. Comm'r of Soc. Sec.*, 391 F. App'x 772, 776–77 (11th Cir. 2010).  In doing so, the ALJ considers all available evidence, including objective medical evidence, medical opinions, information about the claimant's prior work, the claimant's statements about her symptoms, the claimant's daily activities, the frequency and intensity of the claimant's pain or other symptoms, the medications the claimant takes to alleviate pain or other symptoms, and the type of treatment the claimant receives.  *Douglas v. Comm'r, Soc. Sec. Admin.*, 832 F. App'x 650, 653 (11th Cir. 2020); 20 C.F.R. § 404.1529(c).  The ALJ also considers "whether there are any inconsistencies in the evidence and the extent to which there are any conflicts between [the claimant's] statements and the rest

of the evidence."   20 C.F.R. § 404.1529(c)(4).   If the ALJ decides to discount the claimant's subjective testimony about the intensity, persistence, and limiting effects of her symptoms, the ALJ must articulate explicit and adequate reasons for doing so. *Holt*, 921 F.2d at 1223; *see Wilson*, 284 F.3d at 1225 (citing *Hale v. Bowen*, 831 F.2d 1007, 1011 (11th Cir. 1987)).

SSR 16-3p provides additional guidance to ALJs about how to evaluate subjective complaints of pain and other symptoms.   Pursuant to this ruling, the SSA "eliminat[ed] the use of the term 'credibility' from [its] sub-regulatory policy, as [the R]egulations do not use this term."   SSR 16-3p, 2017 WL 5180304, at *2.   "In doing so, [the SSA] clarif[ied] that subjective symptom evaluation is not an examination of an individual's character."   *Id.*   Accordingly, ALJs are "instruct[ed] . . . to consider all of the evidence in an individual's record when they evaluate the intensity and persistence of symptoms after they find that the individual has a medically determinable impairment(s) that could reasonably be expected to produce those symptoms."   *Id.*   "The change in wording is meant to clarify that [ALJs] aren't in the business of impeaching claimants' character; obviously [ALJs] will continue to assess the credibility of pain assertions by applicants, especially as such assertions often cannot be either credited or rejected on the basis of medical evidence."   *Cole v. Colvin*, 831 F.3d 411, 412 (7th Cir. 2016).   Moreover, SSR 16-3p states that when considering the § 404.1529(c)(3) factors to evaluate the intensity, persistence, and limiting effects of the claimant's symptoms, if there is not information regarding one of the factors, it need not be discussed.   SSR 16-3p, 2017 WL 5180304, at *8.

The court finds that the ALJ properly assessed Plaintiff's subjective symptoms in accordance with SSR 16-3p by following the regulatory framework in determining Plaintiff's RFC.  Specifically, in evaluating Plaintiff's subjective complaints, the ALJ stated that he "considered all symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence, based on the requirements of 20 CFR 404.1529 and SSR 16-3p."  (Tr. 14.) Indeed, the ALJ referred to Plaintiff's testimony, thoroughly analyzed the medical evidence, and ultimately found that Plaintiff "has some limitations as a result of her impairments but has no limitation, impairment, or combination of impairments at a disabling level of severity."  (Tr. 14–21.)  After considering this evidence, the ALJ found that Plaintiff's "medically determinable impairments could reasonably be expected to cause some of the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision."  (Tr. 15.)  This language correctly applies the Eleventh Circuit's standard for evaluating subjective complaints of pain and other symptoms.  *See, e.g.*, *Danan v. Colvin*, No. 8:12-cv-7-T-27TGW, 2013 WL 1694856, at *3 (M.D. Fla. Mar. 15, 2013); *Owens v. Comm'r of Soc. Sec.*, No. 3:19-cv-1373-J-MAP, 2021 WL 651368, at *4 (M.D. Fla. Feb. 19, 2021) (finding that although ALJ relied on "boilerplate language in assessing Plaintiff's subjective pain complaints," such language "directly addresses the Eleventh Circuit's pain standard and is not improper *if* supported by substantial evidence") (emphasis in original).

- 15 -

Moreover, contrary to Plaintiff's argument, the court finds that the ALJ articulated specific reasons for discounting Plaintiff's testimony and his decision was supported by substantial evidence.  For example, evidence in the record demonstrates that Plaintiff maintained some activities of daily living (Tr. 13, 21, 42–44, 46, 202–06), did not follow through with pain management at times (Tr. 16, 280), reported on her date last insured a pain level of 5 out of 10 (Tr. 18, 483), and most notably, a state agency medical consultant found Plaintiff able to perform light work (Tr. 20–21, 106–09).

Notwithstanding this evidence, Plaintiff argues that in evaluating her symptoms of pain, the ALJ erred by failing "to examine some of the factors" set forth in 20 C.F.R. § 404.1529(c)(3).  (Dkt. 23 at 11–12.)  Specifically, Plaintiff argues that the ALJ only relied upon the objective medical and opinion evidence to discount her statements of pain.  (*Id.* at 12–13.)  Plaintiff contends, therefore, that the "ALJ failed to heed SSR 16-3p's cautionary instruction not to discount a claimant's statements regarding the intensity, persistence, and limiting effects of symptoms solely because the objective medical evidence does not substantiate the degree of impairment-related symptoms." (*Id.*)

However, the court finds that the ALJ did not solely rely on the objective medical evidence to discount Plaintiff's statements of pain.  Rather, the court notes that the decision reflects that the ALJ considered not only the objective medical evidence, but also the medical opinions, Plaintiff's statements about her symptoms, her daily activities, the frequency and intensity of her pain or other symptoms, the

- 16 -

medications she takes to alleviate pain or other symptoms, and the type of treatment she received as a result of her diagnoses.  As for statements about Plaintiff's daily activities, the decision cites to Plaintiff's and Plaintiff's sister's function report, which reflect that Plaintiff is married and lives with her husband, talks on the phone with friends and family on a daily basis, and visits and receives visits by family multiple times per week. (Tr. 13–14.)  The decision further acknowledges Plaintiff's testimony at the hearing and the ALJ's finding that greater limitations were required with regard to manipulative functions and exposure to environmental conditions.  (Tr. 14, 21.) The ALJ also discussed the medications Plaintiff was prescribed, the various treatments Plaintiff was receiving, and factors that contributed to or aggravated Plaintiff's symptoms.  (Tr. 13, 15, 17–20.)  That some factors were included within the ALJ's discussion of the medical records does not mean the ALJ only considered objective medical evidence.  *See Parker v. Colvin*, No. 8:12-cv-1919-T-24, 2013 WL 3209443, at *11 (M.D. Fla. June 24, 2013) ("there is no reason to require a law judge to discuss each of the § 404.1529(c)(3) factors in his decision").  Indeed, SSR 16-3p makes clear that the ALJ "will discuss the factors pertinent to the evidence of record," which the ALJ did here.  SSR 16-3p, 2017 WL 5180304, at *8.

In sum, the court finds that the ALJ did not rely on any one of these factors to find Plaintiff disabled.  Rather, the ALJ considered all the evidence to find that Plaintiff had a greater "sustained capacity" than she alleged.  (Tr. 21.)  *See Wines v. Acting Comm'r of Soc. Sec.* No. 21-13606, 2022 WL 2526586, *3 (11th Cir. July 7, 2022) ("[T]he ALJ articulated explicit, adequate reasons for discrediting Wines's subjective

testimony, as he provided an overview of her representations of her symptoms in her testimony before determining her representations of the intensity, persistence, and limiting effects of her symptoms were 'not entirely consistent' with the record.") Therefore, the court finds that the ALJ considered the entire record of evidence, appropriately found it to be inconsistent with Plaintiff's subjective complaints, and provided sufficient reasoning such that the court could conduct a meaningful review of the ALJ's decision. *See Trotter v. Berryhill*, No. 8:17-cv-2985-T-AEP, 2019 WL 1376711, at *6 (M.D. Fla. Mar. 26, 2019) ("Although the ALJ did not run through a checklist of factors, the decision indicates that the ALJ properly considered the evidence of record in assessing Plaintiff's subjective complaints.")

## CONCLUSION

Accordingly, after due consideration and for the foregoing reasons, it is

**ORDERED**:

1. The decision of the Commissioner is **AFFIRMED**.

2. The Clerk of Court is directed to enter final judgment in favor of the Commissioner and close the case.

**ORDERED** in Tampa, Florida, on August 4, 2022.

_____
JULIE S. SNEED
UNITED STATES MAGISTRATE JUDGE

Copies furnished to:
Counsel of Record